Good morning. The United States Court of Appeals for the Ninth Circuit is now in session. Good morning everyone. We'll pick the cases up in the order in which they appear on the docket. We have two submitted cases today. Romero Ramirez v. Garland and Mazwar v. Garland. And we will start with U.S. v. Banks. Good morning, Your Honors. Michael Crowley on behalf of Appellant Elishay Banks. I would like to reserve two minutes, if possible, for rebuttal. Yes, you may. Watch the clock, please. It's very handy. I appreciate it. Your Honors, I would like to start by actually jumping to the argument concerning ineffective assessments without discounting the sentencing arguments that I've made. Because I think it's bundled up completely with the argument in the case that also has to do with sufficiency of evidence. And I know it's disfavored generally to decide these kinds of issues at this point. But I believe this court has the facts based on the sealed document that was transmitted to the court in order to be able to make that finding to allow the court to decide it. Can I stop you for a second? You correctly note that we almost never take up IAC claims on direct appeal. Even if from this record we could infer that counsel fell below the standard of care, how could we determine prejudice on this record? It does seem to me that more needs to be developed before one can decide whether there is a worthy Strickland claim there. I understand, Your Honor, except that what I would say is that the entire argument of the government in this had to do with the text messages that had to do with this person that is in the sealed document. The whole defense of the defendant was to lack of knowledge. Right, and I'm accepting your premise that we could conclude from this record that counsel fell below the applicable standard of care by not pursuing the issue of Javier, but how do we know what he would have said? In other words, we don't have anything in this record under which Javier would have said, well, you're right, she had no knowledge of what was going on at all. And so that's my difficulty with us taking it up at this stage. For all I know, Javier, if questioned and found, would support the government's theory. Well, and in fact, that is what the sealed document tends to show. However, I believe that had he been brought before the court or if the investigation had been done to find that out, if that had been done, there would be no problem. But without that, we have no way of knowing, as the court properly points out. I think that given how pervasive the defense was that had to do with him, and for that matter, the government's complete reliance on the text messages between Mr. I'll just say Mr. J, since it's under seal, and the client. That was the real basis of their case. Otherwise, so can I just ask? How do we know that the defense counsel in the trial didn't investigate Javier and find out something that hurt his case? I have nothing in the record other than talking to my client concerning that. That's my concern. To bring this on Javier would be better because then you can actually get something from counsel and some more information about Javier. I mean, it may very well be that this was ineffective assistance of counsel. I just don't know how to find that. Well, what I would hope the court would find is that because, again, I guess I'm sounding like an echo chamber, but the case was so intertwined with that person, and the defense was precluded because of lack of investigation from even asking the agents about it because of the motion limiting and the lack of preparation of the defense counsel at that point to be able to say more to the court as to why it wouldn't be precluded, which was precluded under 403. Even his mentioning of the agents and asking them about it because of... But, Mr. Crowley, doesn't the record show that your client knew that there were drugs in the car, but she thought it was marijuana rather than methamphetamine. Is that right? Well, it is. There was marijuana found on the back seat. Right. Whether she's referring to that, and especially since she had just smoked some by her own account in her testimony, I don't know if she knew... I don't think there's anything in the record that shows that she knew that the methamphetamine was there, only that the marijuana was there, which she basically... So I'm mistaken in my conclusion that the record showed that she knew that some drugs were secreted in the car, but she didn't know which ones. Yes. I don't want to say Your Honor is wrong, but my take from the... I mean, please do. It would help me. I don't think it was one of those cases, and we get them often in this district, where the person was told one thing, but knew they were bringing something in. That was not the case. She did not believe that she was bringing anything in other than the pot that was in her bag on the back seat. But, you know, there's law in this circuit that possession can be inferred from substantial qualities of narcotics secreted in a vehicle over which the driver has essentially exclusive possession. Yes, and I've lived through those cases for the past 30 years, and for most of those 30 years, we were told there was no such thing as what we call a blind mule. That is a person that is set up by somebody to do that. In the last, I'm going to say five or six years, the government has found the need to provide to us Brady material that actually says there is such a thing. We knew it all along in the defense community because it couldn't be all these defendants telling us the same thing. There is a little bit more here. She tells what appears to be a false story to the Border Patrol agents about moving. There are the text messages which show that something is going on. She's not just a tourist in Mexico that somebody stopped drugs in the car. So even if we had to find something, some circumstantial evidence more than simply the possession, there is some here, is there not? There is, and it's wrapped up with Javier. And as the court points out, we don't know what he would say, but certainly it was incumbent upon the defense attorney to take every effort, especially since the government had him in their midst. They knew where he was. He was talking to them. He was working for them. And therefore, he would be the type of person that, at a minimum, you needed to talk to him to find out if he's going to inculpate or exculpate your client. I'll reserve the rest of the time if there's no further questions at this moment. All right. Thank you very much, counsel. Mr. Ray? Yes, Your Honor. Good morning. May it please the court, Mark Ray for the United States. I think I'm going to pick right up where my colleague left off. In this case, there was definitely sufficient evidence that this defendant knew that there were drugs in the car. Now, she denied it post arrest. She took the stand at trial and continued to deny knowledge. But as has already been referred to by the panel, there's longstanding law in this circuit that being the driver and the sole occupant of a vehicle at the border with a substantial quantity of drugs, and here you have just under 20 kilograms of methamphetamine that an expert witness said was worth up to $338,000 retail in the United States, that is sufficient from which to infer knowledge. Can I ask you a question about that? Yes. Our case law has sort of two strands in it. One strand supports exactly what you've said. If you're in control of the car when it comes across the border and it's full of drugs, we can infer guilty knowledge from it. There are other cases that talk about exclusive dominion and control. And I guess my question is, do you have to have exclusive dominion and control of the car at all relevant times or only at the time when it crosses the border? It seems clear here, even under the government's theory of the case, that she didn't have dominion and control of the car at some point when it was in Mexico. Eduardo picked it up and took it away from her. They brought it back to her and she was told to drive it across the border. Does her lack of dominion and control during that time period defeat the inference we would ordinarily take from the large amount of drugs in the car? I'm not aware of any authority to that proposition. My reaction would be that that would go more to the weight. That would be the kind of argument to make to a jury. Ladies and gentlemen of the jury, even though it's true my client was alone in the car at the time, you've heard other evidence. I think that would go to weight. Don't we have a case, and I'm blanking on the name right now, in which we found that simply the amount of drugs in the car weren't enough because there wasn't a showing of dominion and control? I'm not aware of any case to that point, Your Honor. The other thing I would point out, and I think it's also been referred to, even if there are these sort of intra-circuit tensions, here you have a totality of circumstances. It's not just that she was the driver's sole occupant in the value. She also gave inconsistent statements in her interaction with border authorities. I agree with you. The reason I was asking is that I do detect some small tension in our case law on what dominion and control means, whether it means at the moment you're stopped or whether it means at the time up until you're stopped. But I do agree with you that there's other evidence in this case. I apologize that I can't figure out that other nuance, but I think the question is on a sufficiency challenge, you look at the evidence in the light most favorable to the government. Here you have not only the dominion and control evidence, you have the false statements. And then she also took the stand. I mean, that doesn't happen very often. As the government tried to point out, there were certain facial inconsistencies in her testimony where she swore on the first trip across the border that she spent 45 minutes in secondary. Computer records said it was just three minutes, where even by her own admission, Javier was somebody who always had money, was always with cars. I mean, there is longstanding circuit precedent that says a jury can infer the opposite from a defendant's testimony. So, you know, here and that actually is the point I wanted to make. I know my colleague just said that everything's wrapped up with Javier. That's not actually true. I mean, the things I've just told you, when she chooses to lie post arrest and say that she's been unemployed when for months she's making up to fifteen hundred dollars a week driving for somebody, that's a material admission. When she tells the primary inspector that, yeah, I started crossing a lot because I live in Tijuana now, when in fact that was just a plan, that has nothing to do with Javier. So, you know, the government wants to be clear that this case did not turn exclusively on him. Now, segueing to that whole ineffective assistance of counsel issue, you know, you can see from the government's brief, it was usually whenever I see direct appeal, ineffective assistance of counsel, I do my Westlaw search. I come up with a hundred cases in five seconds that say not normally for direct appeal. It has to go habeas. Here, we're definitely going to stand by that. But in the alternative, if I understood my colleague's argument, it seemed to me that he was claiming a lack of investigation just based on two equivocal references by trial counsel to Javier at the motion to eliminate hearing. And I don't think as a matter of law that that's enough upon which you can find ineffective assistance. And we know from the trial record during the examination, again, the defendant took the stand. Her counsel asked her repeated questions about Javier, which would support an inference that he did know about him. And, you know, I think another point I wanted to make in the in limited hearing, I mean, this court, obviously the documents under seal, it's been referred to as document 14-2. There is nothing exculpatory in that document from Javier vis-a-vis Ms. Banks. In fact, it's to the contrary. And the district court during the eliminate hearing, and I look at volume three of the excerpts of record, pages 283 to 284, was specifically telling defense counsel during that eliminate hearing, you know, he said that this is all bad. In fact, I think there's even a phrase like if you get too far into the level of police investigation of Javier, it will open up a world of hurt for your client because he says nothing exculpatory about her. And, you know, the district court issued a protective order. It gave the defense free reign to use the material to investigate. So, you know, I just wanted to make a few points because the optics, I think they're better than my colleagues making them sound. I mean, the defense knew about Javier well before trial that 14-2 document was turned over. All that the district court did in eliminate was say, you know, you're going to be got to be careful. The government was concerned that the defense would argue. Well, it seems like there are two guilty people here. You should draw an adverse inference that Javier is not before you right now, which is not a proper legal argument. So you see in the motion eliminate hearing. That is what the trial prosecutor was trying to do pretrial. And so this issue was hashed out. And, you know, there has been no claim on appeal or just in my last points. And this goes to Judge Hurwitz's initial statement about prejudice. I mean, on this record, as it stands, it's not as if there is some statement or some evidence that we know of right now that Javier that would have helped Miss Banks. And so for that reason, I mean, I think the court, if it wanted to, just on the record, as it stands, find no ineffective assistance. But in the alternative, it can follow that the law that's that's long been the case, which is that that's more properly brought in. I have a question. I mean, I it's just I have trouble concluding that this sentence is substantively reasonable. I mean, I took a look at this woman's P.S.R. And I've got to say, I mean, I've read a lot of P.S.R. And, you know, I have observant friends, so I don't I'm not I'm not typically free to say this. But if someone had led a kind of a godforsaken life, it was this woman. And she was you know, she's 23 years old. She had nothing much of a criminal record. And you all tried to spin her or something else. But the record just shouts out loudly that she was simply a mule and 90 months. Wow. Well, you know what I mean? I'll say I know that the defense hasn't brought a substantive reason was challenged. But in this case, this defendant was looking at a 10 year mandatory minimum. She brought 20 kilograms of methamphetamine. And the government sat down, did safety valve, recommended lower sentence. The district court specifically declined to adopt, you know, the 235 to 293 month guideline range. Instead, went with the lower, you know, he only imposed sentence three months over. And I understand this is nothing to sneeze at. But this district court, another thing you have to look for is unwarranted disparity between defendants. And I've been in this district 21 years. And when people bring 20 kilograms of poison into the country, a lot of them have bad stories. And it is unfortunate. And in fact, I think all those arguments were made by the defense counsel that I'm well aware. I read that PSR, too. I needed to take ibuprofen afterwards. It's very tragic. But none of that was held back from the district court. He sits with his discretion, having viewed these cases for decades. And, you know, I think, again, she was looking at 128 month mandatory minimum. The court even sentenced below what we requested. And the court also recommended the 500 hour RDAP program. And Ms. Banks is the sole control of that. If she makes good use of that program in custody, that will take another 12 months off her sentence. And with good behavior, she'll only do 85 percent of the remainder. So, agreed. There is nothing. This is a strict sanction. But, you know, again, and I'm engaging you with this because I know about the facts. Obviously, we weren't able to brief this because the defense only brought guidelines claims. But I would say, based on what I've reviewed, it's not out of the pale for this district. And, you know, obviously the border, we have the big problem here. And with, you know, 90 months, again, she can end up serving substantially less than that. If she is good behavior in prison and if she follows through on that program. And she's in sole control of those two factors. And so, unless there are any further questions, the government would submit. All right. Thank you, Mr. Ray.  Thank you. Thank you, Your Honor. Yes, to pick up on that last point, I believe it is out of the ordinary, although maybe I was remiss in not arguing it better. It would have been a hard argument to make, so I'm not blaming you. Thank you. Because it would allow me to get into that it essentially was a trial penalty. Because most of the cases in this reign, if the person pleads, gets somewhere between 30 and 40 months. In my experience, long time experience, in the Southern District here. A couple other quick points. One is, let me stay on sentencing for a moment. The fact that the government eventually found that she gave enough information to get the safety valve. Should mean, just by looking at it, that that is acceptance of responsibility also. And the minor role should follow right along with that. So, I see my time is up. So, I will shut up. Well, thank you very much for the argument. Thanks to both of you. Yes. Thank you. USB Banks will be submitted and we'll take up USB Sanchez.
judges: WARDLAW, Parker, HURWITZ